## WILLINGHAM v. RICHARDSON.

1. It was not essential to the validity of an order of court regularly granted in 1886, authorizing the sale of land set apart as a homestead, that the judge should make provision for a confirmation of the sale.
2. Where such an order provided in express terms that the head of the family and his wife were thereby authorized and empowered to themselves effect a sale of the land, the mere fact that the order further directed that another person designated therein should receive the proceeds and be charged with the reinvestment of the same in other property to be held as ļa homestead in lieu of the land authorized to be so sold would not raise any legal obstacle to the latter becoming the purchaser under a sale made in pursuance of the order of court.
3. The plaintiff in fi. fa. having successfully carried the burden of proof resting upon him, the trial judge properly refused to dismiss the levy at the close of the plaintiff's evidence; and the claimant having signally failed to establish her claim to the property levied on, a finding against her was the only logical result which could have been reached.

Argued October 17, — Decided November 26, 1898.

Levy and claim. Before Judge Beck. Henry superior court. April 1, 1898.

An execution in favor of A. L. Richardson against W. B. Willingham, dated December 11, 1895, was levied on land as property of the defendant, and D. S. and Sarah C. Willingham interposed a claim to the land as homestead property. The claim was prosecuted by Sarah C. alone. The plaintiff introduced in evidence the execution and levy; and the testimony of the sheriff, that at the time the suit was filed the defendant in fi. fa. was living on and in possession of the land, and continued to reside on it till after the judgment was obtained, and that D. S. and Sarah C. Willingham were living on the land at the same time. Plaintiff then offered a deed from D. S. and S. C. Willingham, dated December 20, 1889, expressing a consideration of $3,000, conveying the land to W. B. Willingham,

and reciting that it was made in pursuance of an order of the judge of the superior court of the county, made on the application of D. S. Willingham as head of a family, for leave to sell homestead property, and for reinvestment; also, that W. B. Willingham had been appointed in said order to execute the same. The claimant objected that this deed showed that it was made under an order of the judge directing the sale of homestead property, and that no order of court was shown confirming the sale; also, that it was made to the persons appointed by the court to carry out the sale and reinvest the proceeds. The objection was overruled. The plaintiff then offered the application and the order for the sale of the homestead, to which reference was made in the deed; and closed. Claimant moved to dismiss the levy, upon the ground that no case had been made to subject the land to the execution. The motion was overruled. Except in the assignments of error, nothing appears in reference to the suit in which was rendered the judgment which was the foundation of the execution levied. It does not appear that any part of the record of the suit was introduced in evidence. Claimant introduced evidence touching a debt of W. B. Willingham to A. L. Richardson, but there was no evidence connecting this debt with the execution. It appeared that in December, 1889, W. B. Willingham borrowed money from one Rowland, and, as security for the payment of the same, made a deed to him to the land in dispute, and that Rowland transferred the debt to A. L. Richardson, and made a deed conveying to Richardson his (Rowland's) interest in the land conveyed by Willingham as security for the debt. Willingham testified that he paid no part of the purchase-money mentioned in the deed made by D. S. Willingham to him; that the money borrowed on the land by giving the security-deed was applied, in accordance with the instructions of Shattuck & Hoffman (through whom it was obtained), to the payment of lien debts against the land, except $105, which witness received; that D. S. Willingham was in actual possession of the land before he took the homestead in 1879, and up to the first of 1890. Witness had no possession of the land in 1890. He lived with his parents in 1889. No money was paid on

the loan made to him, or to the judgment creditors of his father, D. S. Willingham, until January, 1890. At the time he made application for the loan, the fact that he had not paid anything for the deed made by D. S. Willingham was known to W. A. Brown, who took the application. It appears that Brown, besides taking the application and submitting it to Shattuck & Hoffman, furnished them with an abstract of title, in which it was stated that the land in question was set apart in 1879 to D. S. Willingham, head of a family, that application was made to the judge of the superior court for leave to sell the homestead, and that D. S. Willingham sold the land to W. B. Willingham, with instructions to satisfy all the creditors of D. S. Willingham out of the fund; also, that there were certain judgments against D. S. Willingham, a list of which was given, and that the court had by a verdict declared the land subject to one of these in favor of Turner, administrator, dated October, 1883. There was further evidence showing that the land had been found subject to Turner's judgment, and that the money borrowed was applied to the payment of the judgments referred to in the abstract. The homestead papers were introduced in evidence. The court (trying the case without a jury) adjudged the land subject. Each of the rulings stated is assigned as error. For the other facts see the opinion.

*R. O. Lovett* and *John B. Hutcheson*, for plaintiff in error.
*Robert T. Daniel*, contra.

LEWIS, J. In 1886 D. S. Willingham and wife (the latter and a minor child being then the sole surviving beneficiaries of the homestead) applied to the superior court for leave to sell the land and reinvest the proceeds in other property. The court thereupon passed an order granting said application, the effect of which was to provide (1) "that the said Darius and S. C., his wife, have leave to sell said land at private sale, and they are empowered and authorized to convey to the purchaser a fee simple title to said land;" (2) "that the proceeds of said sale be paid over to W. B. Willingham, the guardian ad litem of the minor beneficiary, who shall reinvest the same in other lands in said county, for the like use and purpose as the land authorized to be sold is now held; that is, for a homestead for

said Darius S. Willingham, for use of his wife and minor children; and that he make report of the sale and reinvestment to the clerk of Henry superior court, that the same may go on the homestead book of record." The deed of December 20, 1889, above referred to, recited that it was made by virtue of the above order of court, and purported to have been executed in pursuance of a sale of the homestead property to W. B. Willingham for a consideration of $3,000. When this deed was offered in evidence by the plaintiff in fi. fa., it was objected to by claimant, on the grounds, (1) "that the same showed it was made under an order of the judge directing the sale of homestead property, and no order of court was shown confirming said sale;" (2) "that the same was made to the person appointed by the court to carry out the sale and reinvestment of the proceeds."

1. As to the first point, viz., "confirmation of sale," the order does not provide for the same. Nor is this order to be treated as void because of the omission to do so. Section 2847 of the Civil Code, under which it was granted, does not make "confirmation" a requisite to a valid sale of homestead property. On the contrary, it provides that the "judge shall have all the power of a chancellor to provide the means and mode of sale and reinvestment." While, therefore, it might in every case be highly expedient for the judge to provide for confirmation by the court, the statute leaves all such particulars to his discretion; and an order not requiring confirmation would not be for that reason illegal and void. Indeed, the plaintiff in error appears to recognize that § 2847 does not require confirmation of sale. It is insisted by counsel in his brief, however, that the above-cited section is to be read in connection with section 3175, which provides that the judge, whenever granting any order to sell "trust property," shall "require the trustee, within sixty days from the date of said order, to file and have recorded in the office of the clerk . . a written report on oath of his actings and doings under such order," etc., to the end that the judge may then, in the event a sale has been consummated, pass an order confirming the same, if deemed advisable. This contention can not, however, be considered, for the simple though abundant reason that the act from which § 3175 was codified

was passed in 1887, long after the order now under consideration was granted. The judge granting the same could not have anticipated the passage of this act and framed his order accordingly, conceding that this act has any bearing upon the sale of homestead property.

2. Dealing with the second exception raised: The plaintiff in error erroneously assumes that W. B. Willingham was "the person appointed by the court to carry out the sale," although it is true he was charged with "reinvestment of the proceeds." A casual reading of the order of court will disclose that D. S. Willingham and wife, the applicants for leave to sell, were themselves authorized and empowered to dispose of the homestead land at private sale, and that W. B. Willingham was not himself charged with the duty of conducting the sale, or authorized to exercise any supervision thereover. He was named as the person to receive the proceeds and reinvest the same in other land; and was bound to faithfully discharge this trust alone. The case is not similar to a trustee becoming the purchaser at his own sale; and it can scarcely be said that, under the order of court, W. B. Willingham was precluded from becoming the purchaser from D. S. Willingham and wife, who were empowered to conduct the sale.

In his second assignment of error plaintiff in error excepts to the judgment of the court refusing to dismiss the levy, on the ground that the land could not be sold as the property of W. B. Willingham, unless it was shown that he had title to it or was in possession of it "at the date of the making of the deed by said Willingham to secure the debt which the plaintiff was seeking to enforce," claimant contending that the court should have taken notice that the plaintiff was seeking to avail himself of the remedy under sections 1969 and 1970 of the Code of 1882, and that the plaintiff in execution, under the law, was bound to show either title in the defendant or possession in him at the date of said security-deed. So far as the evidence discloses, W. B. Willingham had no title to the land when, on December 13, 1889, he executed the deed to secure the loan; for the deed to him from D. S. Willingham and wife was not made until December 20th, of the same year. However, it is evident

that the plaintiff in fi. fa. was not relying on the security-deed, or attempting to assert its lien on the land, but relied rather on the deed of December 20th made to defendant in fi. fa. by claimants, as showing title in W. B. Willingham ón the date of levy. Indeed it was the claimant, not the plaintiff, who introduced the security-deed. No attempt seems to have been made by the plaintiff in fi. fa. to get the benefit of the security-deed by filing with the clerk of court a deed back to W. B. Willingham and selling the land as his property thereunder; even if, under the form of the security-deed, which was not drawn in conformity to the statute, this remedy could be pursued. It follows, therefore, that the court could not take "notice that the plaintiff was seeking to avail himself of the remedy under sections 1969 and 1970 of the Code of 1882," and therefore properly declined to dismiss the levy on the ground that it was not shown that W. B. Willingham had title to the land or was in possession of it "at the date of the making of the deed by said Willingham to secure the debt which the plaintiff was seeking to enforce."

3. The only remaining ground to be considered is that embodied in the 3d assignment in the bill of exceptions, alleging that the court committed error in its final judgment finding the land subject, upon the ground that the sale to W. B. Willingham was void, "for the further reason that no part of the purchase-money of the sale had been paid, and plaintiff did not stand in the place of innocent purchasers without notice." The only evidence upon this point was the testimony of W. B. Willingham, who swore generally, "that he paid no part of the purchase-money mentioned in the deed to him by D. S. Willingham on December 20, 1889;" and "the fact that he had not paid anything for the deed made by D. S. Willingham was known to W. A. Brown at the time said Brown took the application for the loan and when the money was applied to the debts of D. S. Willingham." It appears that Brown was the agent of Rowland, the lender, from whom the plaintiff in fi. fa. purchased the loan notes without recourse, and in like manner obtained an assignment of the security-deed. Conceding, then, that the original lender did not part with his money on the faith of the recital in the deed to W. B. Willingham that the

homestead property was sold to him for a consideration of $3,-000, are both D. S. Willingham and his wife estopped from setting up, as against the lender's assignee, that the deed was really without consideration? Plaintiff in error contends they are not. We are inclined to think the doctrine of estoppel would apply in such a case. It is true the law does not make conclusive upon the grantor the recital of a consideration in a deed, but, notwithstanding such recital, will allow parol proof to show that in point of fact the consideration has never been paid. Yet it can not be doubted that, as a general rule, the grantee can not set up such a plea, and claim on that *account that no title* passed to him as against one who occupies the position of an innocent purchaser, as does the lender's assignee, so far as the record discloses in this case. The only reason that can be urged why this rule would not apply here is the fact that this was homestead property. While the sale of homestead property, without authority of the court, is absolutely void, and no recitals in a deed by the beneficiaries would amount to an estoppel against them in an action to rescind such an unlawful conveyance or to recover back the property, yet in this case this disability of the husband and wife was removed by the order of court. While that order required the sale to be for cash, yet these parties being sui juris, acting under the power delegated to them by the court, and the recitals of their deed showing upon its face that the order of the court had been fully complied with, we see no reason why the doctrine of estoppel should not apply to them as against the rights of an innocent purchaser, who had the right to rely upon the truth of the recitals contained in the deed under which he holds. .

But conceding in this case that the contention of plaintiff in error on this point is correct, the question then arises, whether there was proof demanding a finding that the deed was a voluntary conveyance, without consideration, and therefore of no legal effect. The deed itself was introduced in evidence, and recited a sale to W. B. Willingham, for a valuable consideration, under and by virtue of an order of court. If he actually agreed to become the purchaser at $3,000, and procured the deed to be executed on this understanding, its validity would

not be affected by the fact that he actually paid no part of the purchase-money over to D. S. Willingham and wife. They were not authorized by the order of court to receive from the purchaser the proceeds of sale; so if he, in his individual capacity, purchased the property, undertaking to pay himself, as trustee, the price, he would be bound to comply with his purchase, and the deed would not be a purely voluntary conveyance, without consideration, notwithstanding the purchase-money was not actually treated by him as being in his hands as trustee, and, in the latter capacity, he did not discharge his duty to reinvest the same. There is not a word in the evidence going to show that he did not, as the deed recites, become the purchaser from D. S. Willingham and wife; or that no sale to him actually took place, and the deed was a sham. His denial of the recitals in the deed goes no further than to assert, in effect, that he paid over to D. S. Willingham and wife no part of the $3,000 which he was to pay, and for which he would be liable to account to them as trustee, if the intent of the parties was that the sale was to be for cash under the order of court, and he as trustee acknowledged receipt of the $3,000 which he, in his individual capacity, had agreed to pay. If D. S. Willingham and wife were authorized by the court's order to sell to W. B. Willingham, but not to collect the proceeds, and in good faith accepted his offer to purchase, it would not be necessary to the validity of the sale that he should go through the formality of taking the $3,000 out of his pocket and, in his individual capacity, paying it over to himself as trustee. If a sale actually took place, and this is not denied, the deed would not be void because without consideration, notwithstanding the fact that, as trustee, W. B. Willingham did not reinvest the proceeds as it was his legal duty to do; but it would follow that D. S. Willingham and wife could hold him to his trade as an individual, treat the purchase-money as coming into his hands as trustee, and call him to account in that capacity. Under the very loose and equivocal statements of W. B. Willingham in regard to the transaction, it would be going a great length to say that the trial judge, who stood in the place of a jury, was bound to find that the deed of December 20, 1889, was a voluntary convey-

ance, notwithstanding its recitals of a valid sale, and therefore did not pass title into W. B. Willingham in his character as an individual. It was shown by the plaintiff that W. B. Willingham was in possession of the land, presumably under this very deed, when the levy was made; and while W. B. testifies explicitly that he was not in possession in 1889, when the loan was made, he nowhere undertakes to deny that when the levy was made, or ever since 1890, he has not been in possession claiming as owner under the deed in question, which has been duly recorded and thus published to the world.

We, therefore, conclude that the plaintiff in fi. fa. successfully carried the burden of proof resting upon him, and that the claimant failed to establish her claim to the property levied on; and that the judgment of the court finding the property subject was the only logical result that could have been reached.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*